COPY

FILED

2008 OCT 22 PM 1:41

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  Harvey I. Saferstein (SBN: 49750)
   Nada I. Shamonki (SBN: 205359)
2  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
   Century Plaza Towers
3  2029 Century Park East, Suite 1370
   Los Angeles, CA 90067
4  Telephone: (310) 586-3200
   Facsimile: (310) 586-3202
5  Email: hsaferstein@mintz.com; nishamonki@mintz.com

6

7  Donald W. Schroeder (*Pro Hac Vice Admission Pending*)
   Katharine O. Beattie (*Pro Hac Vice Admission Pending*)
8  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
   One Financial Center
   Boston, MA 02111
9  Telephone: (617) 542-6000
   Facsimile: (617) 542-2241
10 Email: dwschroeder@mintz.com; kobeattie@mintz.com

11 Attorneys for Plaintiff
   JASON CASANI
12

13              **UNITED STATES DISTRICT COURT**

14         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16 JASON CASANI, an individual who resides in California, | Case No.  CV08-06972 |
| 17              Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES** |
| 18        v. | |
| 19 TEKSYSTEMS, INC., a Maryland Corporation doing business in California | |
| 20 as MARYLAND TEKSYSTEMS, INC., and ALLEGIS GROUP, INC., a Maryland | |
| 21 Corporation, | |
| 22              Defendants. | |

FMC
JTLx

23

24

25

26

27

28

1

Plaintiff JASON CASANI complains and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action seeking relief against Mr. Casani's former employers, TEKsystems, Inc. ("TEKsystems") and Allegis Group, Inc. ("Allegis") (collectively "Defendants"), for breach of the terms of various incentive investment award agreements ("Award Agreements") executed by and between Mr. Casani and TEKsystems, pursuant to the terms of the Allegis Group Incentive Investment Plan (the "IIP") (a copy of the IIP is attached hereto as Exhibit A).

## PARTIES

2.      Mr. Casani is, and at all times relevant was, a citizen of California residing at 2335 Melville Drive, San Marino, California, 91108.  Mr. Casani was employed by TEKsystems (formerly Aerotek Data Services Group) from approximately May 1993 until his employment with TEKsystems terminated on September 19, 2008.

3.      TEKsystems and Allegis are corporations organized and existing under the laws of the state of Maryland, with their principal places of business located in Maryland.  TEKsystems is a wholly-owned subsidiary of Allegis Group, Inc.  Allegis was formerly known as Affiliated Services, Inc., which was formerly known as Aerotek, Inc.

4.      At all times relevant to this litigation, TEKsystems (under the name Maryland TEKsystems, Inc.) and Allegis are and were authorized to do business in California.  Defendants have several California locations, including an office located at 600 Wilshire Boulevard, Suite 1650, Los Angeles, California, 90017.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to the diversity of citizenship provisions contained in 28 U.S.C. § 1332 because (i) the parties are citizens of different states, and (ii) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, because Defendants are subject to personal jurisdiction in this district at the time the action is commenced, and there is no district in which the action may otherwise be brought. Defendants have regularly transacted business and/or caused tortious injury to Plaintiff by acts within this judicial district.

## MR. CASANI'S EMPLOYMENT WITH TEKSYSTEMS

7.      Upon information and belief, TEKsystems is the nation's largest IT staffing firm, with over $2.5 billion in revenues for 2007 and over 90 offices across the United States, Canada, and Europe.

8.      Upon information and belief, TEKsystems is owned by Allegis, a $6 billion staffing network that serves more than 8,000 customers (90% of Fortune 100 companies) and employs over 90,000 "contract employees" through more than 260 offices worldwide.

9.      Mr. Casani began working at TEKsystems (at that point, Aerotek Data Services Group) in May 1993, as a Technical Recruiter in its Los Angeles, California office.   Throughout his entire tenure with TEKsystems, Mr. Casani worked in California.

10.    In June 1994, Mr. Casani was promoted to Account Manager and transferred to TEKsystems' San Diego, California office.

11.    In June 1996, Mr. Casani was promoted to Director of Business Operations, responsible for managing the San Diego, California office.

12.    In May 2000, Mr. Casani was transferred to the Director of Business Operations position in TEKsystems' Newport Beach, California office.

13.    In May 2001, Mr. Casani was transferred to the Director of Business Operations position in TEKsystems' Los Angeles, California office.

14.    In September 2007, Mr. Casani was transferred to a Contracts Manager position in TEKsystems' Los Angeles, California office.

15.     During his entire employment at TEKsystems, Mr. Casani's client accounts were located in California.

16.     After his transfer to Contracts Manager, which in all respects constituted a demotion, Mr. Casani discussed his future at TEKsystems with Regional Vice-President Chris Russell, and Mr. Russell informed him that there were no opportunities for Mr. Casani's promotion at TEKsystems.  With the message clearly sent that there was no longer a place for him with TEKsystems, Mr. Casani separated from TEKsystems on September 19, 2008.  He explained to Mr. Russell that he wanted to maintain an amicable relationship with TEKsystems after his departure.

17.     Upon his separation from TEKsystems, Mr. Casani returned all company property, including company information on his home computer.

18.     After his departure, Mr. Casani, Allegis Board Member Michael Salandra, and TEKsystems' General Counsel Francis Buckley engaged in substantive and lengthy negotiations regarding a proposed severance arrangement.   These negotiations stalled on October 21, 2008.

## THE INCENTIVE INVESTMENT PLAN

19.     On January 14, 1993, Allegis implemented the IIP "to provide a method whereby employees of Allegis Group, Inc. and its subsidiaries may acquire an interest in the economic progress of the Companies, an incentive to promote the best interests of the Companies, and, in particular, an incentive to promote the long term economic growth of the Companies."

20.     Under the terms of the IIP, eligible employees are granted "incentive investment units" ("Units"), which the IIP describes as "an amount equal to the sum of (i) the Fair Market Value of one share of common stock of Allegis Group, plus (ii) the excess, if any, of (a) the aggregate Cash Dividends paid by Allegis Group with respect to one issued and outstanding share of common stock of Allegis Group, over (b) the aggregate cash distribution paid by the Companies with respect to one unit."

21.     The Units described in the IIP are essentially phantom stock, meaning that employees do not actually hold equity in Allegis (or its subsidiary, TEKsystems), but rather some other intangible item with a value equivalent to a common share of Allegis stock.

22.     Allegis awards the Units to employees through the IIP's Award Agreements, which state that "the award is subject to the applicable provisions of the Plan…such provisions are incorporated herein by reference and made a part thereof." These Award Agreements are signed by the Defendants and the particular employee.

23.     The IIP Award Agreements award the employees a specified number of Units, and set forth a schedule for when separate percentages of the Units will vest. The Award Agreements state that "you shall be entitled to receive payment for vested Units upon your Separation from Service (as defined in the Plan) with the Company."

24.     Under Section 4 of the 2007 Award Agreement (a copy of the 2007 Award Agreement is attached hereto as Exhibit B), for federal tax purposes, the agreement states that "you will recognize ordinary income, treated as compensation for services and subject to federal and state income tax withholding, at the time you receive, or have the right to receive, payment for Units which have vested."  The 2007 Award Agreement also states that "[F]or FICA purposes, however, the value of the Units at the time of the award are regarded as wages when the Units vest, and you will be subject to applicable FICA withholding at each time Units vest."

25.     Under the IIP, Units vest at staggered intervals.  Employees receive IIP statements that specify the employee's number of vested and non-vested Units.

26.     With respect to dividend payouts, the IIP states that TEKsystems "shall make cash distributions with respect to each Unit awarded" to eligible employees "in an amount per Unit equal to the Ordinary Dividend per share declared by the [Allegis Group] Board."

27.     According to the IIP, these cash distributions are paid out in June and December of each year.

28.     These payments and disbursements pursuant to the vested IIP Units are non-discretionary and are awarded and calculated pursuant to specific criteria.

29.     The IIP also states that upon termination of employment, and assuming certain restrictive covenants are complied with, eligible employees are to receive the principle balance of the value of Units in their individual Plan accounts, with "(a) five percent (5%) of the amount credited to the Employee's Account [to] be paid to the Employee at the end of each of the ten consecutive calendar quarters immediately following" the employee's separation from employment, and "(b) fifty percent (50%) of the amount credited to the Employee's Account, plus all accrued interest, [to] be paid to the Employee at the end of the thirty month period following" the employee's separation from employment.

30.     The IIP agreement contains restrictive covenants similar to those in Mr. Casani's employment agreement with TEKsystems:

### 9.     EARNING OF UNITS; RIGHT TO PAYMENT FOR ACCOUNT

In order to earn the Units allocated to an Employee pursuant to the Plan, the Employee shall not, during the thirty (30) month period following the date of his or her Separation from Service, either directly on his or her own behalf, or indirectly through any entity in, or on behalf of or with respect to which, the Employee is an officer, director, trustee, shareholder, creditor, employee, partner or consultant:

(1)     Engage in the business of recruiting, employing and providing the services of scientific, telecommunications, engineering, technical, information technology, information system, industrial, office support, financial support, accounting energy, aviation, environmental and/or other personnel on a temporary or permanent basis, providing information systems, information technology and telecommunications services, or any other lines of business that the Companies engage in, enter or prepare to enter during the Employee's employment with the Companies (collectively, the "Companies Business"), in which the Employee performed work or obtained knowledge and information during the two (2) year period preceding his or her Separation from Service, within a radius of two hundred fifty (250) miles of the office in which the Employee last worked or any other office in which the Employee worked during the two (2) years preceding his or Separation from Service, or as much thereof as a Court of competent jurisdiction deems reasonable;…

6

## **MR. CASANI'S PARTICIPATION IN THE IIP**

31.     As a management-level employee, Mr. Casani was eligible to participate in the IIP.

32.     Since November 12, 1996, Allegis awarded Mr. Casani IIP Units, per the IIP's Award Agreements, on an annual basis.

33.     Mr. Casani's most recent grant of 2,000 Units occurred on December 31, 2007, pursuant to the fully executed 2007 Award Agreement.  He was also awarded 438 Units pursuant to a 2007 Performance Award, dated March 21, 2008 (attached hereto as Exhibit C).

34.     Based on Mr. Casani's participation in the IIP and the Unit awards that Allegis granted him, Allegis regularly provided him with cash dividend disbursements throughout his employment.   The most recent disbursement of $36,130.50 ($.75 per Unit) was made in June 2008.

35.     As of Mr. Casani's termination date on September 19, 2008, he accrued a total of 48,174 Units.   As reflected by his March 31, 2008 Allegis Group IIP Statement, these 48,174 Units vested on December 31, 2007 (attached hereto as Exhibit D).

36.     Upon information and belief, by July 2008, the value per Unit was set at $26.25.   Based on these numbers, the total value of Mr. Casani's vested Units is $1,264,567.50, as of September 19, 2008.

37.     Throughout his tenure with TEKsystems,  Defendants, including but not limited to, Stephen Bisciotti, Jim Davis, and Michael Salandra, consistently told Mr. Casani that the incentive awards guaranteed to him under the IIP represented compensation he had earned, as part of his total compensation package.

38.     Indeed, Defendants consistently represented to Mr. Casani that the IIP money was a component of his overall compensation package with the Company.

7

## DEFENDANTS' REFUSAL TO PAY MR. CASANI
## HIS EARNED IIP AWARD COMPENSATION

39.     Under the IIP, and reflected in the IIP's Award Agreements and statements, Mr. Casani is scheduled to receive $1,264,567.50 in IIP payments plus interest in the amount of $200.080.50, for a total of $1,464,655.50 in payments over approximately the next thirty (30) months.

40.     Upon Mr. Casani's departure from TEKsystems, he was informed that Faith Johnson, Vice-President of Human Resources for TEKsystems, would contact him regarding the package of documents that would need to be completed in order to process his post-employment Unit payout, pursuant to the IIP.

41.     Ms. Johnson never contacted Mr. Casani and he never received the IIP paperwork.

42.     Upon information and belief, Mr. Buckley, or an agent acting on his behalf, placed a "hold" on Mr. Casani's IIP paperwork pending his execution of TEKsystems' severance agreement.

43.     Mr. Casani's first quarterly payout under the IIP was supposed to occur on September 30, 2008 (*i.e.*, the end of the first calendar quarter following his employment separation).

44.     As of September 30, 2008, the due date of the first payment under the IIP, Mr. Casani was in compliance with the terms and conditions of the IIP.

45.     Mr. Casani continues to be in compliance with the terms and conditions of the IIP.

46.     Since his separation from TeKsystemson in September 19, 2008, Defendants have not notified Mr. Casani of any disqualifying event or action under the IIP.

47.      Defendants have presented no evidence to Mr. Casani that he violated any term or condition of the IIP.

8

48.     Upon information and belief, Defendants were advised by skilled lawyers and other professionals, employees and advisors, knowledgeable about California labor and wage law, and employment and personnel practices.

49.     Upon information and belief, Defendants knew or should have known that Mr. Casani is entitled to prompt payment of his owed IIP compensation, and that he has not received his first payment owed to him on September 30, 2008.

50.     Upon information and belief, although Defendants knew they had a duty to compensate Mr. Casani and that they had the financial ability to pay such compensation, they willfully, knowingly, and intentionally failed to do so.

## COUNT I - DECLARATORY RELIEF

51.     Mr. Casani incorporates and realleges Paragraphs 1-50 of this Complaint as though fully set forth herein.

52.     An actual controversy has arisen and now exists between Mr. Casani and Defendants concerning their respective rights and duties under the IIP.  Mr. Casani contends that California law, specifically California Business and Professions Code § 16600, *et seq.*, applies to the IIP and the restrictive covenants contained therein, and thus they are void and unenforceable.  Defendants represented to Mr. Casani that the restrictive covenants and forfeiture provisions in the IIP are enforceable and subject to a Maryland choice of law provision.

53.     Mr. Casani seeks a binding determination on three critical issues: (1) a declaration of his rights under the IIP and/or whether California law governs the restrictive covenants and forfeiture provisions contained in the IIP; (2) assuming California law applies to the IIP, a determination that those restrictive covenants and forfeiture provisions are unlawful and void; and (3) a declaration that, assuming the invalidity of the restrictive covenants and forfeiture provisions, Defendants are obligated to make timely payments to Mr. Casani pursuant to the terms and conditions of the IIP.

54.     The declaration is necessary and appropriate at this time under the circumstances in order that Mr. Casani may ascertain his legal rights and duties with regard to prospective employment, and whether such employment may be entered into without being subject to restrictive covenants.

## COUNT II - BREACH OF CONTRACT

55.     Mr. Casani incorporates and realleges Paragraphs 1-54 of this Complaint as though fully set forth herein.

56.     The conduct of  Defendants as alleged herein constitutes a breach of the terms of the valid Award Agreements executed by and between Mr. Casani and Allegis, pursuant to and incorporating by reference the terms of the IIP.

57.     All conditions precedent necessary for the enforcement of the IIP and the IIP's Award Agreements have been met.

58.     Mr. Casani is damaged and will continued to be damaged as a result of Defendants' breach of the provisions of the IIP and the IIP's Award Agreements.

## COUNT III - VIOLATION OF CALIFORNIA LABOR CODE § 201, *ET SEQ.*

59.     Mr. Casani incorporates and realleges Paragraphs 1-58 of this Complaint as though fully set forth herein.

60.     At all relevant times, Defendants were employers and were required to comply with the provisions of the California Labor Code, including, but not limited to, Section  201, *et seq.*, which requires the prompt payment of wages.

61.     At all relevant times, Mr. Casani was an employee of Defendants, and Defendants were required to pay Mr. Casani promptly for all wages earned.

62.     Mr. Casani earned the Units under the IIP in exchange for his fifteen (15) years of service to Defendants.

63.      The vested IIP payments were part of the compensation for Mr. Casani's service, and thus these payments constitute wages under California Labor Code § 201, *et seq.*

64.     Defendants' failure to pay Mr. Casani his first IIP payment, due on September 30, 2008, constitutes a willful violation of <u>California Labor Code</u> § 201, *et seq*.

65.     As a result of Defendants' failure to comply with the <u>California Labor Code</u>, as described above, Mr. Casani has suffered a loss of compensation and damages in an amount according to proof.

66.     As a result of Defendants' failure to comply with the requirements of <u>California Labor Code</u>, as described above, Mr. Casani is entitled to recover penalties, including waiting time penalties, pursuant to <u>California Labor Code</u> Section 203.

67.     As a result of Defendants' failure to comply with the requirements of <u>California Labor Code</u>, as described above, Mr. Casani is entitled to recover his attorneys' fees and costs of suit, pursuant to <u>California Labor Code</u> Sections 218.5 and 2802(c), and/or other provisions of law.

### <u>COUNT IV - UNFAIR BUSINESS PRACTICES</u>

68.     Mr. Casani incorporates and realleges Paragraphs 1-67 of this Complaint as though fully set forth herein.

69.     Defendants' attempts to prevent Mr. Casani from engaging in his profession in the IT staffing industry are oppressive, unlawful, and grossly disproportionate to actions necessary to protect any legitimate business interest of Defendants, and are unlawful under <u>California Business and Professions Code</u> § 16600.  Accordingly, such action violate <u>California Business and Professions Code</u> §§ 17200, *et seq*.

70.     Moreover, as a California employee, Mr. Casani is entitled to avail himself of the protections of California law, including <u>California Business and Professions Code</u> §§ 16600 and 17200, and to engage in the lawful practice of his profession, without interference.   Any attempt by Defendants to enforce the

11

1  restrictive covenants and forfeiture provisions in the IIP constitutes unfair
2  competition.

3      71.    Further, Defendants' conduct alleged herein, including but not limited to
4  their fraudulent activities regarding their IIP, constitutes fraudulent, unlawful and/or
5  unfair business practices in violation of <u>California Business and Professions Code</u> §§
6  17200 *et seq*.

7              **<u>COUNT V - PROMISSORY ESTOPPEL</u>**

8      72.    Mr. Casani incorporates and realleges Paragraphs 1-71 of this Complaint
9  as though fully set forth herein.

10      73.    Defendants promised Mr. Casani the vested IIP payments as part of the
11 compensation for his service and compliance with the IIP.

12      74.    Defendants had a reasonable expectation that their promise of IIP
13 payments would induce action and/or forbearance on Mr. Casani's part.

14      75.    Mr. Casani did rely on Defendants' promise by continuing to work at
15 TEKsystems for fifteen years, and by complying with the terms and conditions of the
16 IIP.

17      76.    Mr. Casani's reliance on Defendants' promise caused him a detriment
18 that can only be avoided by enforcement of the promise.

19              **<u>COUNT VI - UNJUST ENRICHMENT</u>**

20      77.    Mr. Casani incorporates and realleges Paragraphs 1-76 of this Complaint
21 as though fully set forth herein.

22      78.    Mr. Casani conferred upon Defendants the benefit of his service at
23 TEKsystems and compliance with the terms and conditions of the IIP.

24      79.    Defendants had knowledge of this benefit of Mr. Casani's service and
25 compliance with the IIP.

26      80.    Defendants' acceptance of Mr. Casani's service to TEKsystems and
27 Allegis made it inequitable for Defendants to retain this benefit without the payment
28 of its full value, including the IIP payments.

## PRAYER FOR RELIEF

**WHEREFORE,** Mr. Casani respectfully requests that this Court:

(1)   Enter a judgment against Defendants on all Counts;

(2)   Declare that the restrictive covenants and forfeiture provisions in Mr. Casani's IIP are void and unenforceable under <u>California Business and Professions Code</u> Section 16600;

(3)   Declare that Defendants' use of restrictive covenants and forfeiture provisions in their employees' IIP agreements constitutes an unfair business practice under <u>California Business and Professions Code</u> Section 17200;

(4)   Declare that Defendants are obligated to make timely payments to Mr. Casani pursuant to the terms and conditions of the IIP;

(5)   Award Mr. Casani all actual, consequential, and incidental losses and damages, according to proof;

(6)   Award Mr. Casani double damages and statutory penalties pursuant to <u>California Labor Code</u> Section 203 and other provisions of law;

(7)   Award Mr. Casani his costs of suit incurred herein and reasonable attorneys' fees pursuant to <u>California Labor Code</u> Sections 218.5 and 2802(c) and other provisions of law; and

(8)   Award such other and further relief as may appear just and proper.

Dated:  October 22, 2008

Respectfully Submitted,

**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**

Harvey I. Saferstein
Nada I. Shamonki
Donald W. Schroeder
*(Pro Hac Vice Admission Pending)*
Katharine O. Beattie
*(Pro Hac Vice Admission Pending)*
*Attorneys for Plaintiff*
*JASON CASANI*

# EXHIBIT A

# ALLEGIS GROUP
## INCENTIVE INVESTMENT PLAN

### 1.      PURPOSES OF THE PLAN

This Plan is intended to provide a method whereby employees of Allegis Group, Inc. and its subsidiaries may acquire an interest in the economic progress of the Companies, an incentive to promote the best interests of the Companies, and, in particular, an incentive to promote the long term economic growth of the Companies. Accordingly, the Companies may select Employees who will be eligible to earn Incentive Investment Units in the manner hereinafter provided, subject to the conditions as may be imposed in the case of any particular selection and the terms of the Plan.

### 2.      DEFINITIONS

The following terms shall have the meanings respectively indicated:

(a)      *"Account"* shall mean the account established by the Companies to record the Unit transactions herein described;

(b)      *"Allegis Group"* shall mean Allegis Group, Inc., a Maryland corporation;

(c)      *"Board"* shall mean the Board of Directors of Allegis Group, Inc., or if the context suggests, the Board of Directors of any of Allegis Group's subsidiaries;

(d)      *"Cash Dividends"* shall mean the aggregate amount of all Ordinary Dividends and Tax Dividends.

(e)      *"Code"* shall mean the Internal Revenue Code of 1986, as amended, and any regulations issued thereunder;

(f)      *"Companies"* shall mean Allegis Group, Inc. and its subsidiaries, and *"Company"* shall mean any one of the foregoing;

(g)      *"Contract Employee"* shall be defined as an employee of any of the Companies who is or was employed to perform services at customers or clients of any of the Companies;

(h)      *"Disability"* shall mean a condition resulting in a Separation from Service on account of a physical or mental illness or injury, which actually prevents the Employee from performing his or her normal and customary duties for the Company for a continuous period of one year, which continuous period shall not be deemed interrupted by a return to work for less than thirty (30) consecutive working days;

(i)      *"Employee"* shall mean any person engaged or proposed to be engaged as a director, officer or employee of the Companies;

1

(j)     *"Fair Market Value"* shall mean the value as determined by the Allegis Group Board using any reasonable method of valuation considering all of the relevant facts and circumstances, including, without limitation, those set forth in Proposed Treasury Regulation Section 1.409A-1(b)(5)(iv)(B), as finally adopted and as amended from time to time, or other guidance issued by the Internal Revenue Service pursuant to Section 409A of the Code;

(k)     *"Incentive Investment Unit"* or *"Unit"* shall mean an amount equal to the sum of (i) the Fair Market Value of one share of common stock of Allegis Group, plus (ii) the excess, if any, of (a) the aggregate Cash Dividends paid by Allegis Group with respect to one issued and outstanding share of common stock of Allegis Group, over (b) the aggregate cash distributions paid by the Companies with respect to one Unit;

(l)     *"Ordinary Dividend"* shall mean any dividend declared by the Board with respect to the shares of common stock of Allegis Group, except for a Tax Dividend;

(m)    *"Plan"* shall mean this Allegis Group Incentive Investment Plan (Plan A), as amended and restated as of December 31, 2004, and any amendments hereto;

(n)     *"Regular Employee"* shall mean an employee of the Companies who is not a Contract Employee;

(o)     *"Separation from Service"* shall mean separation from service (within the meaning of Section 409A(a)(2)(A)(i) of the Code) with the Companies; and

(p)     *"Tax Dividend"* shall mean any dividend declared by the Board with respect to the shares of common stock of Allegis Group for the purpose of paying the taxes due and owing by Allegis Group's shareholders on the undistributed taxable income (net of non-deductible items) of Allegis Group.

## 3.    ADMINISTRATION OF THE PLAN

The Plan shall be administered by the Board. The Board may establish such rules and regulations as it deems necessary to determine eligibility to participate in the Plan and for the proper administration of the Plan, and may amend or revoke any rule or regulation so established.

The Board shall make all other determinations necessary or advisable for the administration of the Plan and shall correct any defect or supply any omission or reconcile any inconsistency in the Plan in the manner and to the extent the Board deems desirable to carry the Plan into effect.

All determinations of the Board shall be made by not less than a majority of its members present at a meeting at which a quorum is present. A majority of the entire Board shall constitute a quorum for the transaction of business. Any action required or permitted to be taken at a meeting of the Board may be taken without a meeting, if a unanimous written consent which sets forth such action is signed by each member of the Board and filed with the

2

minutes of proceedings of the Board. No member of the Board shall be liable, in the absence of bad faith, for any act or omission with respect to his services in administering the Plan.

No provision contained in the Plan, nor any rule or regulation established by the Board in its administration of this Plan, shall be construed to:

(a)     give any Employee of the Companies any right to be eligible to earn any Units other than in the sole discretion of the Board;

(b)     give any Employee of the Companies any rights or interest whatsoever, whether present or future, with respect to shares of common stock of Allegis Group or its subsidiaries;

(c)     limit in any way the right of the Companies to terminate any Employee's employment with the Companies at any time; or

(d)     be evidence of any agreement or understanding, express or implied, that the Companies will employ any Employee for any particular period, in any particular position or at any particular rate of remuneration.

### 4.     UNITS ELIGIBLE TO BE EARNED

The total number of Units eligible to be earned during the term of the Plan shall be determined at the sole discretion of the Board.

### 5.     ELIGIBILITY

Employees eligible to earn Units shall be selected by the Board from among those key Employees of the Companies who, in the judgement of the Board, are members of a select group of management or highly compensated employees. In selecting Employees eligible to earn Units, and in determining the number of Units each Employee is eligible to earn, the Board may consider the office or position held by the Employee, the Employee's degree of responsibility for and contribution to the growth and success of the Companies, the Employee's length of service, promotions, potential or any other factors which the Board may consider relevant.

### 6.     ELIGIBILITY TO EARN UNITS

In accordance with the provisions of this Plan, the Board shall select each year the Employees who are eligible to earn Units, shall determine the number of Units such Employee is eligible to earn, and shall establish such other provisions and conditions as the Board may deem necessary or desirable.

### 7.     ALLOCATION OF UNITS TO THE ACCOUNT

The Companies shall initially allocate to the Account of each Employee who is eligible to earn Units, the number of Units such Employee is eligible to earn. At any given time, each Unit allocated to the Employee's Account shall be deemed to be economically equivalent to the sum of (i) the Fair Market Value of one share of Allegis Group's common stock, plus (ii) the excess, if any, of (a) the aggregate Cash Dividends made by Allegis Group

with respect to one issued and outstanding share of common stock of Allegis Group, over (b) the aggregate cash distributions made by the Companies with respect to one Unit.

All determinations of Fair Market Value, the amounts allocated to the Account of each Employee who is eligible to earn Units, and the value of such Employee's Account shall be made by the Board, whose determinations shall be binding upon the Companies and all Employees who are eligible to earn Units. The establishment and maintenance of any Accounts do not create in any Employee any rights in, or entitle any Employee to any payments with respect to, any Units until such Units are earned in accordance with Section 9 of the Plan.

The Companies shall not be required to set aside any funds to make the payments required herein or to purchase, hold or dispose of any common stock of the Companies or any investments with respect to amounts allocated to the Accounts; each Company's only obligation being to make payments as described in Section 9. Any funds set aside by the Companies to make the payments required herein or any earnings thereon shall be solely for the purpose of aiding the Companies in measuring and meeting their respective obligations under this Plan and no escrow, trust or trust fund is intended.

**NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NO SHARES OF COMMON STOCK OF THE COMPANIES SHALL BE ISSUED TO ANY EMPLOYEE UNDER THE TERMS OF THIS PLAN.**

### 8.   NON-TRANSFERABILITY OF UNITS OR ACCOUNT

Neither the Units eligible to be earned under the Plan nor any right to payment for the value of such Units or the Accounts shall be subject to any transfer, assignment, pledge, mortgage or attachment. Any attempt to transfer, assign, pledge, mortgage, attach or otherwise dispose of, any Units, interest in the Accounts or right to payment contrary to the provisions of this Plan shall be void and ineffective, shall give no right to the purported transferee and shall result in the Units involved in such attempt to be void and cancelled.

### 9.   EARNING OF UNITS; RIGHT TO PAYMENT FOR ACCOUNT

In order to earn the Units allocated to an Employee pursuant to the Plan, the Employee shall not, during the thirty (30) month period following the date of his or her Separation from Service, either directly on his or her own behalf, or indirectly through any entity in, or on behalf of or with respect to which, the Employee is an officer, director, trustee, shareholder, creditor, employee, partner or consultant:

(1)   Engage in the business of recruiting, employing and providing the services of scientific, telecommunications, engineering, technical, information technology, information systems, industrial, office support, financial support, accounting, energy, aviation, environmental and/or other personnel on a temporary or permanent basis, providing information systems, information technology and telecommunications services, or any other lines of business that the Companies engage in, enter or prepare to enter during the Employee's employment with the Companies (collectively, the "Companies Business"), in which the Employee performed work or obtained knowledge and information during the two

4

(2) year period preceding his or her Separation from Service, within a radius of two hundred fifty (250) miles of the office in which the Employee last worked or any other office in which the Employee worked during the two (2) years preceding his or her Separation from Service, or as much thereof as a Court of competent jurisdiction deems reasonable;

(2)     Approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of any of the Companies, about which Employee obtained knowledge by reason of Employee's employment by the Companies, in an attempt to:

(a)     enter into any business relationship with a client or customer of any of the Companies if the business relationship is competitive with any aspect of Companies' Business in which Employee worked during the two (2) year period preceding his or her Separation from Service, or

(b)     reduce or eliminate the business such client or customer conducts with the Companies;

(3)     Approach, contact, solicit or induce any Regular Employee of the Companies:

(a)     to provide services to any individual, corporation or entity whose business is competitive with any of the Companies, or

(b)     to leave the employ of any of the Companies;

(4)     Approach, contact, solicit or induce any person who has been a Contract Employee within the two (2) year period prior to the date of the Employee's Separation from Service and about whom Employee obtained knowledge by reason of Employee's employment with the Companies:

(a)     to cease working for any of the Companies at clients or customers of the Companies, or

(b)     to refrain from beginning work for any of the Companies at clients or customers of any of the Companies, or

(c)     to provide services to any individual, corporation or entity whose business is competitive with any of the Companies;

(5)     In any way, solicit, divert or take away any staff, temporary personnel, trade, business, or good will from the Companies; solicit accounts or personnel which became known to the Employee through his or her employment with the Companies; influence or attempt to influence any of the Companies' customers or personnel not to do business with the Companies; divulge the name or address or any information concerning any account of the Companies to any other person or company; or disclose any confidential or proprietary information or knowledge acquired by the Employee while in the employ of the Companies, which restriction shall include the Companies' business methods, techniques, and

management and financial expertise, as well as their plans with respect to acquisitions and future services to be rendered; or

(6)     Use, divulge or disclose proprietary, trade secret or confidential information of the Companies.

If the Employee complies with the terms and provisions of this Section 9 and earns the Units that he or she is eligible to earn, the Company that employed the Employee at the time of his or her Separation from Service shall have the obligation to pay such Employee the value of such Employee's Account as determined at the time of the Employee's Separation from Service and in accordance with the terms of the Plan.  If the Separation from Service is due to death or Disability, payment shall be by check within 30 days after the date of Separation from Service.  If Separation from Service is due to any reason other than death or Disability, the amount credited to the Employee's Account, together with simple interest on the outstanding principal balance at the rate of (i) 9% per annum with respect to any Units awarded prior to or on December 31, 2004, and (ii) 6% per annum with respect to any Units awarded after December 31, 2004, will be paid to the Employee as follows: (a) five percent (5%) of the amount credited to the Employee's Account shall be paid to the Employee at the end of each of the ten consecutive calendar quarters immediately following his or her Separation from Service and the receipt by the Company of his or her Unit certificates (if any were issued); and (b) fifty percent (50%) of the amount credited to the Employee's Account, plus all accrued and unpaid interest, shall be paid to the Employee at the end of the thirty month period following his or her Separation from Service.

The terms and conditions set forth in this Section 9 are material and essential terms of any award of Units.  In the event that any provision of this Section 9 of the Plan is held or found invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction in an action between an Employee and any of the Companies, such Employee shall return to the Companies any and all amounts that he or she has received or otherwise is entitled to receive with respect to his or her Units upon a Separation from Service.

In addition, the Companies shall make cash distributions with respect to each Unit awarded to an Employee in an amount per Unit equal to the Ordinary Dividend per share declared by the Board.  Payments of any such cash distributions with respect to the Units shall be made by the Companies on the second Friday in June and December of each year for any Ordinary Dividends declared and paid during the prior period.  In addition, on each June and December payment date during calendar years 2007 and 2008, the Companies shall make a cash distribution in the amount of $0.125 per Unit in addition to the amount of any Ordinary Dividend per share declared by the Board during such periods.  To the extent that the Companies make a cash distribution with respect to the Unit awarded to an Employee, the Employee's Account shall be adjusted as set forth in Section 7 of the Plan to account for such cash distribution.

Each Employee eligible to earn Units shall have the right to designate a beneficiary or beneficiaries to receive payment under this Plan in the event of his or her death.  Such designation of beneficiary shall be in writing, shall be signed by the Employee, and shall be delivered to Allegis Group at its principal office.  Such designation shall be effective when received.  The Employee shall have the right to change such designation by filing a new designation, in the same manner, with Allegis Group.  Any such change will be deemed to

6

revoke all prior designations, unless a contrary intention is expressly stated in the change of designation. In the event an Employee fails to validly designate a beneficiary, or if no designated beneficiary survives the Employee, any payment due under the terms of the Plan shall be paid to the Employee's spouse, if surviving, and if there is no surviving spouse, to the Employee's estate.

### 10.   LIABILITY OF THE COMPANIES FOR PAYMENT

The Account established hereunder shall be for bookkeeping and accounting purposes only and shall not require any of the Companies to actually establish, maintain or allocate any amounts to the Account. Each Company's only obligation to its Employees who have earned Units shall be to make payments as described in Section 9. None of the Companies shall be obligated or liable to make payments with respect to Units earned by Employees of the other Companies or their subsidiaries.

Any Account established or maintained by any of the Companies shall be solely for the purpose of aiding such Company in measuring and meeting its obligations under this Plan, and no escrow, trust or trust fund is intended. To the extent that any Company does, in its discretion, establish, maintain or allocate to an Account, such Company will be the sole owner of such Account and neither the Employee, a beneficiary of the Employee nor any other person shall have any legal or equitable interest therein.

Nothing stated herein will cause such Accounts to be treated as anything but the general assets of the respective Companies subject to the claims of their respective general creditors. The Companies shall have the right at any time to use such Accounts in the ordinary course of their respective businesses.

The right of an Employee, or any other person, in an Account to receive payment thereof shall not be greater than, nor have any preference or priority over, the rights of any other general unsecured creditor of the respective Companies, nor will anything stated herein cause such Accounts to represent the vested, secured or preferred interest of an Employee or his or her beneficiaries.

### 11.   WITHHOLDING TAXES

An Employee who earns or is eligible to earn Units under this Plan shall be deemed conclusively to have authorized the Companies to withhold from the payments made in accordance with Section 9 hereof, funds in the amounts equal to the federal and state withholding taxes applicable to the income recognized by such Employee and attributable to the payments.

### 12.   AMENDMENT,           MODIFICATION,           SUSPENSION           OR DISCONTINUANCE OF PLAN

The Board may from time to time alter, amend, suspend or discontinue this Plan or revise it in any respect whatsoever; provided, however, that no such action by the Board shall (1) materially and adversely affect any Units previously earned under the Plan, or (2) accelerate the date for any payment of (or with respect to) a Unit.

7

Notwithstanding the foregoing, the Board may (without the approval or consent of any Employee who has received an Award under the Plan):

(1)     make such amendments or modifications to the Plan and Units that the Board, in its sole and absolute discretion, determines are necessary or desirable in order to address and conform the provisions of the Plan to the provisions of Section 409A of the Code; or

(2)     elect to terminate the Plan and distribute the value of all Units:

(a)     in connection with the termination of all arrangements sponsored by Allegis Group (and any other company that is deemed to be part of a single service recipient for purposes of Section 409A of the Code) that are required to be aggregated under Proposed Treasury Regulation Section 1.409A-1(c), provided that (i) no payments (other than those payments that would have been made had the termination not occurred) are made within 12 months of the date of termination; (ii) all payments with respect to the Units are made within 24 months of the date of termination; and (iii) neither Allegis Group (or any other company that is deemed to be part of a single service recipient for purposes of Section 409A of the Code) adopts a new arrangement that would have been aggregated with the Plan under Proposed Treasury Regulation Section 1.409A-1(c) within 5 years from the date of termination.

(b)     within 30 days prior to, or twelve (12) months following, a "Change In Control" (as defined in Proposed Treasury Regulation Section 1.409A-3(g)(5)(iv), as finally adopted and as amended from time to time, or other guidance issued by the Internal Revenue Service pursuant to Section 409A(e)(2) of the Code), provided that all substantially similar arrangements that are sponsored by Allegis Group (and any other company that is deemed to be part of a single service recipient for purposes of Section 409A of the Code) are terminated and all Units are paid out within 12 months of the date of termination;

(c) with 12 months of a corporate dissolution that is taxed under Section 331 of the Code or with the approval of a bankruptcy court pursuant to 11 U.S.C. Section 503(b)(1)(A), provided that payment with respect to such Units is made as soon as administratively practicable thereafter.

No such termination, amendment or modification shall be deemed to materially and adversely affect any Units previously awarded under the Plan

## 13.     ISSUANCE OF CERTIFICATES

At the discretion of the Companies, a certificate or certificates representing the Units eligible to be earned by each Employee may be issued and delivered by the Companies after the Employee has been notified by the Companies that he or she is eligible to earn the Units. Notwithstanding the foregoing, the issuance and delivery of a certificate or certificates to an Employee shall not entitle such Employee to receive any payments with respect to any Units or Account until the Units represented by such certificate or certificates have been earned in accordance with the terms of any particular agreement or the Plan. Any certificate or certificates issued and delivered by the Companies shall be, in all respects, subject to the

8

terms of any particular agreement or the Plan and shall bear an appropriate legend to such effect.

### 14.   ADJUSTMENT OF UNITS

In the event that any time after an Employee becomes eligible to earn Units pursuant to the Plan, the issued and outstanding shares of common stock of Allegis Group are converted into or exchanged for a different number or kind of shares of Allegis Group, or other securities of Allegis Group by reason of merger, consolidation, division, recapitalization, or other reclassification, the Board shall make an appropriate and equitable adjustment to the number and kinds of Units eligible to be earned and cash distributions to be paid, so that after such an event the Units shall reflect the equivalent proportionate interest in Allegis Group as before the occurrence of such event. Any such adjustment made by the Board shall be final and binding upon all Employees who have earned or are eligible to earn Units, the Companies, and all other interested persons.

### 15.   NO RIGHTS OF STOCKHOLDER

UNITS ARE NOT SHARES OF STOCK OF ALLEGIS GROUP OR ANY OF ITS SUBSIDIARIES, AND EMPLOYEES WHO HAVE EARNED OR ARE ELIGIBLE TO EARN UNITS SHALL NOT HAVE ANY OF THE RIGHTS OF A STOCKHOLDER.

### 16.   COMPLIANCE WITH SECTION 409A

Notwithstanding anything herein to the contrary, all distributions hereunder shall be made in accordance with the provisions of Section 409A of the Code.

### 17.   GOVERNING LAW

This Plan, the Units and all rights and obligations under the Plan shall be construed in accordance with, interpreted under and governed by the laws of the State of Maryland.

### 18.   EFFECTIVE DATE OF THE PLAN

This Plan originally became effective on January 14, 1993, and shall continue to be effective, as amended and restated, from and after January 1, 2007.

### 19.   DESIGNATION OF THE PLAN

This Plan, as amended and restated, may be referred to in other documents and instruments as the "Allegis Group Incentive Investment Plan".

### 20.   HEADINGS

The headings of the Sections contained herein are provided for convenience purposes only and shall not in any way affect the meaning or construction of any provision of the Plan.

9

# EXHIBIT B

# ALLEGIS GROUP

## INCENTIVE INVESTMENT PLAN

### 2007 AWARD AGREEMENT

### FOR

### Jason Casani

We are pleased to advise you that, **TEKsystems, Inc.** (the "Company"), by action of the Board of Directors of Allegis Group, Inc. (the "Board") and pursuant to the terms of the Allegis Group Incentive Investment Plan (the "Plan"), the Company hereby awards to you, subject to your acceptance which shall be indicated by your execution of this Agreement below, a total of **10000** Incentive Investment Units ("Units").  The date of award of the Units for all purposes shall be January 1, 2007 (the "Award Date").

The award is subject in all respects to the applicable provisions of the Plan, a complete copy of which has been furnished to you and receipt of which you acknowledge by acceptance of the award.  Such provisions are incorporated herein by reference and made a part hereof.

In addition to the terms, conditions and restrictions set forth in the Plan, all terms, conditions and restrictions set forth in this Agreement, including the following, are applicable to the award of Units as evidenced hereby:

1.      <u>Vesting</u>.  You shall be entitled to receive payment for the Units only to the extent that the Units shall have vested and you have complied with and fulfilled all of the terms of the Plan.  The Units awarded by this Agreement shall vest in accordance with the following conditions:

(a)   No Units shall vest unless, on the respective dates set forth below, your performance with the Company for the then current calendar year has been satisfactory and you have remained in your present or promoted position with the Company throughout such year; and

(b)  Subject to (a) above, the Units shall vest to the extent of:

| Vesting Date | % of Units Vesting |
|---|---|
| 12/31/07 | 20% |
| 12/31/08 | 20% |
| 12/31/09 | 20% |
| 12/31/10 | 20% |
| 12/31/11 | 20% |

2.      Termination of Employment.  Nothing contained in the Plan or in this Agreement shall restrict the right of the Company (a) to terminate your employment at any time, for cause or without cause, or (b) to change your employment (i.e., to demote or otherwise change your title, position or job within the Company).   The termination of your employment or change in employment with the Company, regardless of the reason for such termination or change, shall have the consequences provided for as set forth in this Agreement and under the Plan.

3.      Payment.  Subject to the terms and conditions set forth in this Agreement and in the Plan, you shall be entitled to receive payment for vested Units upon your Separation from Service (as defined in the Plan) with the Company.  You shall have no right to payment for Units that have not vested as of the date of your Separation from Service with the Company.

In addition, you specifically acknowledge and agree that the terms and conditions set forth in Section 9 of the Plan are material and essential terms of your award of Units and your eligibility to receive payment for any vested Units.  You further acknowledge and agree that in the event that any provision of Section 9 of the Plan is held or found invalid or unenforceable for

-2-

any reason whatsoever by a court of competent jurisdiction in an action between you and the Company, you shall return to the Company any and all amounts that you have received or otherwise are entitled to receive with respect to the Units after the date of your Separation from Service with the Company.

      4.    <u>Tax Consequences</u>.  Under the Internal Revenue Code now in effect, you will not recognize income at the time you are awarded Units under the Plan or at the time the Units vest. Instead, you will recognize ordinary income, treated as compensation for services and subject to federal and state income tax withholding, at the time you receive, or have the right to receive, payment for Units which have vested.  For FICA purposes, however, the value of Units at the time of the award are regarded as wages when the Units vest, and you will be subject to applicable FICA withholding at each time Units vest.

      Although the Company anticipates that the federal income tax consequences of the Plan, the award, vesting, and redemption of and payment for the Units are as described, the Internal Revenue Service is not bound by such description and the Company does not guaranty the federal income tax treatment of the award, its acceptance, or the vesting, redemption of or payment for the Units.  Accordingly, you should discuss with your own tax advisor the anticipated tax consequences of the Plan and this award.

      5.    <u>Withholding Taxes</u>.  The Company will withhold from each payment all applicable state, local, and federal withholding taxes, as required by law.

-3-

6.    <u>Entire Agreement; Modification</u>.  This Agreement contains the entire agreement between the parties with respect to the subject matter contained herein and may not be modified, except as provided in a written document signed by each of the parties hereto.

7.    <u>Conformity with Plan</u>.  This Agreement is intended to conform in all respects with, and is subject to all applicable provisions of, the Plan, which is incorporated herein by reference.  Inconsistencies between the Agreement and the Plan shall be resolved in accordance with the terms of the Plan.

In order to indicate your acceptance of the Units awarded to you by this Agreement, subject to the restrictions and upon the terms and conditions set forth in this Agreement and in the Plan, please execute and return to the Company the enclosed duplicate of this Agreement. You will be deemed to have declined to accept the award of Units if your acceptance has not been received at the office of the Secretary of the Company by 5:00 p.m. on December 8, 2006.

Very Truly Yours,

**TEKsystems, Inc.**

By:  *Randall D. Sones*

Randall D. Sones, Secretary

ACCEPTED AND AGREED TO:

*Jason Casani*

Jason Casani

12-06-06

Date

---

-4-

# EXHIBIT C

### ALLEGIS GROUP INCENTIVE INVESTMENT PLAN

### 2007 AWARD AGREEMENT FOR

**Casani, Jason**
**Emp Id 00010623**

### Performance Award

1. **Award of Units** - Pursuant to the terms of the Allegis Group Incentive Investment Plan (the "Plan") and by action of the Board of Directors of Allegis Group, Inc., **TEKsystems, Inc.** (the "Company") is pleased to advise you that you have been awarded, subject to your acceptance which shall be indicated by your execution of this agreement below, **438** Incentive Investment Units ("Units"). You have been awarded the Units as an employee of the Company, a wholly owned subsidiary of Allegis Group, Inc. The date of the award of units for all purposes shall be January 1, 2008.

2. **Incentive Investment Plan** – The Company is providing you with a copy of the Allegis Group Incentive Investment Plan. Your award of the Units is, in all respects, subject to the terms and provisions of the Plan and all capitalized terms used in this agreement shall have the same meaning as set forth in the Plan. In addition, you specifically acknowledge and agree that the terms and conditions set forth in Section 9 of the Plan are material and essential terms of your award of Units and your eligibility to receive payment for any Units. You further acknowledge and agree that in the event that any provision of Section 9 of the Plan is held or found invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction in an action between you and the Company, you shall return to the Company any and all amounts that you have received or otherwise are entitled to receive with respect to the Units after the date of your Separation of Service with the Company.

3. **Tax Consequences** - Under the Internal Revenue Code, as now in effect, you will not recognize income at the time you accept the award of Units under the Plan. Instead, you will recognize ordinary income, treated as compensation for services and subject to federal and state income tax withholding, at the time you receive, or have the right to receive, payment for Units, which you are awarded under the Plan. Although the Company anticipates that the federal income tax consequences of the Plan are as described, the Internal Revenue Service is not bound by such description and the Company does not guarantee the federal income tax treatment of your award of Units, or your acceptance or redemption of or payment for the Units. Accordingly, you should discuss with your own tax advisor the anticipated tax consequences of the Units and the Plan.

4. **Acceptance** - In order to indicate your acceptance of the terms of this agreement and your award of the Units, subject to the restrictions and upon the terms and conditions set forth herein and in the Plan, please execute and return to the Company the enclosed duplicate of this agreement. Please return the signed duplicate copy of this agreement to the attention of the Secretary c/o Kimberly Despeaux, Allegis Group, Inc., 7301 Parkway Drive, Hanover, Maryland 21076. You will be deemed to have declined your award of Units if your acceptance has not been received at the office of the Secretary of the Company by 5 p.m. on March 31, 2008.

Very truly yours,

ACCEPTED AND AGREED TO:

**TEKsystems, Inc.**

By: *Randall D. Sones*

_____
**Jason Casani**

Randall D. Sones, Secretary

_____
Date

# EXHIBIT D

# *Allegis Group*
# *Incentive Investment Plan*
# *Statement as of* 03/31/2008



Jason Casani
2335 Melville Drive
San Marino, California 91108

Participant ID:    00010623

| Award Date | Vested Units | Non-Vested Units* | Total Units |
|---|---|---|---|
| 11/12/1996 | 15,000.00 | - | 15,000.00 |
| 12/31/1997 | 3,000.00 | - | 3,000.00 |
| 12/31/1999 | 660.00 | - | 660.00 |
| 12/31/2000 | 1,100.00 | - | 1,100.00 |
| 12/31/2002 | 20,000.00 | - | 20,000.00 |
| 12/31/2003 | 800.00 | - | 800.00 |
| 12/31/2004 | 2,400.00 | - | 2,400.00 |
| 12/31/2005 | 1,800.00 | - | 1,800.00 |
| 01/01/2007 | 976.00 | - | 976.00 |
| 01/01/2007 | 2,000.00 | - | 2,000.00 |
| 01/01/2008 | 438.00 | - | 438.00 |

| | | | |
|---|---|---|---|
| **Total** | 48,174.00 | .00 | 48,174.00 |
| **Value Per Unit**\*\* | $25.85 | $25.85 | $25.85 |
| **Total Unit Value**\*\* | $1,245,297.90 | $.00 | $1,245,297.90 |

*Plan participants are only eligible to receive the value of their Vested Units.  Non-Vested Units become Vested Units in accordance with the Plan and the participant's award agreement.*

**The Value per Unit and Total Plan Value are based upon the Fair Market Value as determined by the Board of Directors. Future determinations of the Value per Unit and Total Value may result in an increase or decrease in unit value based upon the performance of the Company.  The actual total value of a participant's account at the time of distribution will depend upon such determinations and other factors stated in the Plan.*

*All Units are subject to the terms and conditions of the Allegis Group Incentive Investment Plan, as amended from time to time, and any award agreement relating to such Units.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Florence-Marie Cooper and the assigned discovery Magistrate Judge is Jennifer T. Lum.

The case number on all documents filed with the Court should read as follows:

## CV08- 6972 FMC (JTLx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Harvey I. Saferstein (SBN: 497□□ )
Nada I. Shamonki (SBN: 205359)
MINTZ LEVIN COHN FERRIS GLOVSKY &
POPEO
2029 Century Park East, Suite 1370
Los Angeles, California 90067
Phone: 310-586-3200; Fax: 310-586-3202
Email:hsaferstein@mintz.com; nshamonki@mintz.com
Attorneys for Plaintiff JASON CASANI

**ORIGINAL**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CASANI, an individual who resides in California,<br><br>PLAINTIFF(S)<br>V.<br>TEKSYSTEMS, INC., a Maryland Corporation doing business in California as MARYLAND TEKSYSTEMS, INC., and ALLEGIS GROUP, INC., a Maryland Corporation,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV08-06972 FMC   JTLx<br><br><br>**SUMMONS** |

TO:DEFENDANT(S): □

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Harvey I. Saferstein and Nada I. Shamonki</u>, whose address is <u>2029 Century Park East, Suite 1370, Los Angeles, California 90067</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____OCT 2 2 2008_____

By: _Natalie Gongoria_
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

American LegalNet, Inc.
www.USCourtForms.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| JASON CASANI, an individual who resides in California | TEKSYSTEMS, INC., a Maryland corporation doing business in California as MARYLAND TEKSYSTEMS, INC., and ALLEGIS GROUP, INC., a Maryland corporation |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C. Harvey I. Saferstein, Nada I. Shamonki 2029 Century Park East, Suite 1370 Los Angeles, CA 90067 Tel: 310-586-3200; Fax: 310-586-3202 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ in excess of 75,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sec. 1332; Complaint is for declaratory relief, breach of contract, violations of labor code, unfair competition, etc.

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES: ☐ 400 State Reapportionment ☐ 410 Antitrust ☐ 430 Banks and Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 890 Other Statutory Actions ☐ 891 Agricultural Act ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 895 Freedom of Info. Act ☐ 900 Appeal of Fee Determination Under Equal Access to Justice ☐ 950 Constitutionality of State Statutes

CONTRACT: ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 151 Medicare Act ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholders' Suits ☒ 190 Other Contract ☐ 195 Contract Product Liability ☐ 196 Franchise

REAL PROPERTY: ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property

TORTS PERSONAL INJURY: ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Fed. Employers' Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Personal Injury-Med Malpractice ☐ 365 Personal Injury-Product Liability ☐ 368 Asbestos Personal Injury Product Liability

IMMIGRATION: ☐ 462 Naturalization Application ☐ 463 Habeas Corpus-Alien Detainee ☐ 465 Other Immigration Actions

TORTS PERSONAL PROPERTY: ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability

BANKRUPTCY: ☐ 22 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157

CIVIL RIGHTS: ☐ 441 Voting ☐ 442 Employment ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 445 American with Disabilities - Employment ☐ 446 American with Disabilities - Other ☐ 440 Other Civil Rights

PRISONER PETITIONS: ☐ 510 Motions to Vacate Sentence Habeas Corpus ☐ 530 General ☐ 535 Death Penalty ☐ 540 Mandamus/Other ☐ 550 Civil Rights ☐ 555 Prison Condition

FORFEITURE / PENALTY: ☐ 610 Agriculture ☐ 620 Other Food & Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 R.R. & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety /Health ☐ 690 Other

LABOR: ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Railway Labor Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS: ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark

SOCIAL SECURITY: ☐ 61 HIA(1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW 405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g))

FEDERAL TAX SUITS: ☐ 870 Taxes (U.S. Plaintiff or Defendant) ☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY:  Case Number: **CV08-06972**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

American LegalNet, Inc. www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
  ☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
  ☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Maryland |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): *Nada Shamonki*  Date October 22, 2008
  Nada I. Shamonki

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                    **CIVIL COVER SHEET**                    Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com